**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Michelle Tarpley, Stella Schaeffer, Deborah Saravello, Denise Elliott, Rosina Turmel, Rachanee Lee, Elias Rivera, Lillian Buti, Lynn Cahill, Sharda White, Vickie Shoffler, Frederick Pope, and Yulanda Davis, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.   12 C 8819 |
| LVNV Funding, LLC, a Delaware limited liability company, and Arrow Financial Services, LLC, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) | <u>Jury Demanded</u> |

**COMPLAINT**

Plaintiffs, Michelle Tarpley, Stella Schaeffer, Deborah Saravello, Denise Elliott, Rosina Turmel, Rachanee Lee, Elias Rivera, Lillian Buti, Lynn Cahill, Sharda White, Vickie Shoffler, Frederick Pope and Yulanda Davis, bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, <u>et seq.</u> ("FDCPA"), for a finding that Defendants' debt collection actions violated the FDCPA, and to recover damages for Defendants' violations of the FDCPA, and allege:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2.   Venue is proper in this District because: a) many of the acts and transactions occurred here; and, b) Defendants reside and transact business here.

## PARTIES

3. Plaintiffs are citizens of, and reside in, several states: Michelle Tarpley ("Tarpley") in Tennessee; Stella Schaeffer ("Schaeffer") in New York; Debora Saravello ("Saravello") in Pennsylvania; Denise Elliott ("Elliot") and Rosina Turmel ("Turmel") in New Hampshire; Rachanee Lee ("Lee") in Texas; Elias Rivera ("Rivera") in Florida; Lillian Buti ("Buti") in Indiana; Lynn Cahill ("Cahill") in New York; Sharda White ("White") in Illinois; Vickie Shoffler ("Shoffler") in Pennsylvania; Frederick Pope ("Pope") in Florida; and Yulanda Davis ("Davis") in Georgia. Defendants attempted to collect delinquent consumer debts from each Plaintiff, despite the fact that they had demanded, as was their right, that collection actions cease, and despite the fact that each of the Plaintiffs was represented by the legal aid attorneys at the Chicago Legal Clinic's Legal Advocates for Seniors and People with Disabilities program ("LASPD"), located in Chicago, Illinois.

4. Defendant, LVNV Funding, LLC ("LVNV"), is a Delaware limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. LVNV operates a nationwide delinquent debt collection business, and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant LVNV was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debts it attempted to collect from Plaintiffs.

5. Defendant, Arrow Financial Services, LLC ("Arrow"), is a Delaware limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA,

because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. From its offices in Niles, Illinois, Arrow operates a nationwide delinquent debt collection business, and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant Arrow was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt it attempted to collect from Plaintiffs.

6. Defendants LVNV and Arrow are both bad debt buyers who buy up large portfolios of defaulted consumer debts for pennies on the dollar, which they then collect upon through other collection agencies.

7. Defendants LVNV and Arrow are each authorized to conduct business in the State of Illinois and maintain registered agents within the State of Illinois, see, records from the Illinois Secretary of State, attached as Group Exhibit A. In fact, Defendants each conduct extensive and substantial business in Illinois.

8. Defendants LVNV and Arrow are each licensed as debt collection agencies in the State of Illinois, see, records from the Illinois Department of Professional Regulation, attached as Group Exhibit B. In fact, both Defendants act as collection agencies in Illinois.

## COMMON FACTUAL ALLEGATIONS

9. Defendant LVNV and Arrow knew, or should have known, that the accounts they were selling and buying were subject to requests to cease collections and cease communications, and were subject to notices of attorney representation.

10. Moreover, Defendants knew, or should have known, that there were

problems with the debts at issue because of the many notices they received from LASPD, and other consumers' attorneys, that the debts they were buying, selling and collecting upon were subject to cease collections and cease communications demands and notices of attorney representation.

11. Furthermore, Defendants knew, or should have known, that there were problems with the debts at issue due to the age of the portfolios of debts at issue. Any reasonable review of the records on these accounts would have shown that the accounts should not have been sold, bought or collected upon.

12. Defendants' collection actions complained of herein occurred within one year of the date of this Complaint.

13. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. See, Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

## INDIVIDUAL FACTUAL ALLEGATIONS

**Ms. Michelle Tarpley**

14. Ms. Tarpley is a disabled woman, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to CorTrust. At some point in time, Defendant Arrow bought Ms. Tarpley's CorTrust debt and when Arrow began trying to collect the CorTrust debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

15. Specifically, Defendant Arrow sent Ms. Tarpley a collection letter demanding payment of the CorTrust debt. Accordingly, on February 24, 2009, one of

Ms. Tarpley's attorneys at LASPD informed Defendant Arrow that Ms. Tarpley was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Tarpley was forced, by her financial circumstances, to refuse to pay her unsecured debt. A copy of this letter is attached as Group Exhibit C, at pp. 1-4.

16. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Tarpley collection letters, dated April 24, 2012 and May 10, 2012, which demanded payment of the CorTrust debt. Copies of these collection letters are attached as Group Exhibit D, at pp. 1-2.

17. Accordingly, on May 19, 2012, Ms. Tarpley's LASPD attorney had to send Defendant LVNV a letter, again directing that communications and collections had to cease. Copies of this letter and fax confirmation are attached as Group Exhibit E, at pp. 1-3.

**Ms. Stella Schaeffer**

18. Ms. Schaeffer is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to Washington Mutual Bank. At some point in time, Defendant Arrow bought Ms. Schaeffer's Washington Mutual Bank debt, and when Arrow began trying to collect the Washington Mutual Bank debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

19. Specifically, Defendant Arrow hired a collection agency to demand

payment of the Washington Mutual Bank debt from Ms. Schaeffer. Accordingly, on March 24, 2009, one of Ms. Schaeffer's attorneys at LASPD informed Defendant Arrow that Ms. Schaeffer was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Schaeffer was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 5-10.

20. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Schaeffer collection letters, dated October 8, 2011 and December 3, 2011, which demanded payment of the Washington Mutual debt. Copies of these collection letters are attached as Group Exhibit D, at pp. 3-4.

21. Accordingly, on December 20, 2011, Ms. Schaeffer's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E, at pp. 4-6.

**Ms. Deborah Saravello**

22. Ms. Saravello is a disabled woman, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to CorTrust. At some point in time, Defendant Arrow bought Ms. Saravello's debt, and when Arrow began trying to collect the CorTrust debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

23. Specifically, Defendant Arrow hired a collection agency to demand

payment of the CorTrust debt from Ms. Saravello. Accordingly, one of Ms. Saravello's attorneys at LASPD informed Defendant Arrow, via a letter dated September 20, 2009, but successfully transmitted on September 28, 2009, that Ms. Saravello was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Saravello was forced, by her financial circumstances, to refuse to pay her unsecured debt. A copy of this letter and fax confirmation are attached as Group Exhibit C, at pp. 11-16.

24.    Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Saravello a collection letter, dated March 9, 2012, which demanded payment of the CorTrust debt. A copy of this collection letter is attached as Group Exhibit D, at p. 5.

25.    Accordingly, on April 16, 2012, Ms. Saravello's LASPD attorney had to send Defendant LVNV a letter again directing it to cease communications and to cease collections. Copies of this letter, fax confirmation and e-mail confirmation are attached as Group Exhibit E, at pp. 7-10.

**Ms. Denise Elliott**

26.    Ms. Elliot is a disabled woman, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to Premier Bankcard. At some point in time, Defendant Arrow bought Ms. Elliott's Premier Bankcard debt and when Arrow began trying to collect the Premier Bankcard debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

27. Specifically, Defendant Arrow sent Ms. Elliott a collection letter demanding payment of the Premier Bankcard, Inc., debt. Accordingly, on June 17, 2009, one of Ms. Elliott's attorneys at LASPD informed Defendant Arrow that Ms. Elliott was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Elliott was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 17-21.

28. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Elliott a collection letter, dated November 11, 2011, which demanded payment of the Premier Bankcard debt. A copy of this collection letter is attached as Group Exhibit D, at p. 6.

29. Accordingly, on December 22, 2011, Ms. Elliott's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E, at pp. 11-13.

**Ms. Rosina Turmel**

30. Ms. Turmel is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to Bank of America. At some point in time, Defendant Arrow bought Ms. Turmel's debt and when Arrow began trying to collect the Bank of America debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

31. Specifically, Defendant Arrow hired a collection agency to demand payment of the Bank of America debt from Ms. Turmel. Accordingly, on June 27, 2009, one of Ms. Turmel's attorneys at LASPD informed Defendant Arrow that Ms. Turmel was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Turmel was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C , at pp. 22-27.

32. Instead of ceasing collections, however, Defendant Arrow then sold the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Turmel a collection letter, dated May 8, 2012, which demanded payment of the Bank of America debt. A copy of this collection letter is attached as Group Exhibit D, at p. 7.

33. Accordingly, on June 1, 2012, Ms. Turmel's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached at Group Exhibit E, at pp. 14-16.

**Ms. Rachanee Lee**

34. Ms. Lee is a disabled senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to HSBC. At some point in time, Defendant Arrow bought Ms. Lee's debt and when Arrow began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

35. Specifically, Defendant Arrow hired a collection agency to demand payment of the HSBC debt from Ms. Lee. Accordingly, on May 18, 2009, one of Ms. Lee's attorneys at LASPD informed Defendant Arrow that Ms. Lee was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Lee was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 28-33.

36. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Lee a collection letter, dated November 11, 2011, which demanded payment of the HSBC debt. A copy of this collection letter is attached as Group Exhibit D, at pp. 8-9.

37. Accordingly, on May 25, 2012, Ms. Lee's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E, at pp. 17-19.

**Mr. Elias Rivera**

38. Mr. Rivera is a disabled senior citizen, with limited assets and income, who fell behind on paying his bills, including a debt he allegedly owed to Washington Mutual Bank. At some point in time, Defendant Arrow bought Mr. Rivera's Washington Mutual Bank debt and when Arrow began trying to collect the Washington Mutual Bank debt from him, he sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding his financial difficulties and Defendants' collection

actions.

39. Specifically, Defendant Arrow sent Mr. Rivera a collection letter demanding payment of the Washington Mutual Bank debt. Accordingly, on March 31, 2009, one of Mr. Rivera's attorneys at LASPD informed Defendant Arrow that Mr. Rivera was represented by counsel, and directed Arrow to cease contacting him, and to cease all further collection activities because Mr. Rivera was forced, by his financial circumstances, to refuse to pay his unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 34-38.

40. Thereafter, Defendant Arrow hired another collection agency to demand payment of the Washington Mutual Bank debt from Mr. Rivera. Accordingly, on September 15, 2009, one of Mr. Rivera's attorneys at LASPD informed Defendant Arrow again that Mr. Rivera was represented by counsel, and directed Arrow to cease contacting him, and to cease all further collection activities because Mr. Rivera was forced, by his financial circumstances, to refuse to pay his unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 39-44.

41. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Mr. Rivera a collection letter, dated September 20, 2012, which demanded payment of the Washington Mutual debt. A copy of this collection letter is attached as Group Exhibit D, at p. 10.

42. Accordingly, on October 18, 2012, Mr. Rivera's LASPD attorney sent Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

11

at pp. 20-22.

**Ms. Lillian Buti**

43. Ms. Buti is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to HSBC. At some point in time, Defendant Arrow bought Ms. Buti's debt and when Arrow began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

44. Specifically, Defendant Arrow hired a collection agency to demand payment of the HSBC debt from Ms. Buti. Accordingly, on March 1, 2008, one of Ms. Buti's attorneys at LASPD informed Defendant Arrow that Ms. Buti was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Buti was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 45-49.

45. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Buti a collection letter, dated November 23, 2011, which demanded payment of the HSBC debt. A copy of this collection letter is attached as Group Exhibit D, at p. 11.

46. Accordingly, on November 30, 2011, Ms. Buti's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 23-25.

**Ms. Lynn Cahill**

47. Ms. Cahill is a disabled woman, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to Washington Mutual Bank. At some point in time, Defendant Arrow bought Ms. Cahill's debt, and when Arrow began trying to collect the Washington Mutual debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

48. Specifically, Defendant Arrow hired a collection agency to demand payment of the Washington Mutual debt from Ms. Cahill. Accordingly, on March 28, 2007, one of Ms. Cahill's attorneys at LASPD informed Defendant Arrow that Ms. Cahill was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Cahill was forced, by her financial circumstances, to refuse to pay her unsecured debt. A copy of this letter is attached as Group Exhibit C, at pp. 50-53.

49. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Cahill a collection letter, dated July 26, 2012, which demanded payment of the Washington Mutual debt. A copy of this collection letter is attached as Group Exhibit D, at p. 12.

50. Accordingly, on August 14, 2012, Ms. Cahill's LASPD attorney sent Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 26-28.

**Ms. Sharda White**

51. Ms. White is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to HSBC. At some point in time, Defendant Arrow bought Ms. White's debt, and when Arrow began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

52. Specifically, Defendant Arrow hired a collection agency to demand payment of the HSBC debt from Ms. White. Accordingly, on July 28, 2010, one of Ms. White's attorneys at LASPD informed Defendant Arrow that Ms. White was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. White was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 54-58.

53. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. White a collection letter, dated December 9, 2011, which demanded payment of the HSBC debt. A copy of this collection letter is attached as Group Exhibit D, at p. 13.

54. Accordingly, on February 8, 2012, Ms. White's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 29-31.

**Ms. Vickie Shoffler**

55. Ms. Shoffler is a disabled woman, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to HSBC. At some point in time, Defendant Arrow bought Ms. Shoffler's debt and when Arrow began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

56. Specifically, Defendant Arrow hired a collection agency to demand payment of the HSBC debt from Ms. Shoffler. Accordingly, on March 1, 2007, one of Ms. Shoffler's attorneys at LASPD informed Defendant Arrow that Ms. Shoffler was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Shoffler was forced, by her financial circumstances, to refuse to pay her unsecured debt. A copy of this letter is attached as Group Exhibit C, at p. 59.

57. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Shoffler a collection letter, dated March 14, 2012, which demanded payment of the HSBC debt. A copy of this collection letter is attached as Group Exhibit D, at p. 14.

58. Accordingly, on April 22, 2012, Ms. Shoffler's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 32-34.

**Mr. Frederick Pope**

59.     Mr. Pope is a disabled senior citizen, with limited assets and income, who fell behind on paying his bills, including a debt he allegedly owed to GE Money Bank. At some point in time, Defendant Arrow bought Mr. Pope's debt and when Arrow began trying to collect the GE Money Bank debt from him, he sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding his financial difficulties and Defendants' collection actions.

60.     Specifically, Defendant Arrow hired a collection agency to demand payment of the GE Money Bank debt from Mr. Pope.  Accordingly, on May 12, 2010, one of Mr. Pope's attorneys at LASPD informed Defendant Arrow that Mr. Pope was represented by counsel, and directed Arrow to cease contacting him, and to cease all further collection activities because Mr. Pope was forced, by his financial circumstances, to refuse to pay his unsecured debt.  Copies of this letter and fax confirmation are attached as Group Exhibit C, at pp. 60-66.

61.     Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV.  Defendant LVNV then had another collection agency send Mr. Pope a collection letter, dated November 28, 2011, which demanded payment of the GE Money Bank debt.  A copy of this collection letter is attached as Group Exhibit D, at p. 15.

62.     Accordingly, on December 2, 2011, Mr. Pope's LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections.  Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 35-37.

**Ms. Yulanda Davis**

63. Ms. Davis is a disabled senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed to GE Money Bank. At some point in time, Defendant Arrow bought Ms. Davis' debt and when Arrow began trying to collect the GE Money Bank debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

64. Specifically, Defendant Arrow hired a collection agency to demand payment of the GE Money Bank debt from Ms. Davis. Accordingly, on June 10, 2008, one of Ms. Davis' attorneys at LASPD informed Defendant Arrow that Ms. Davis was represented by counsel, and directed Arrow to cease contacting her, and to cease all further collection activities because Ms. Davis was forced, by her financial circumstances, to refuse to pay her unsecured debt. A copy of this letter is attached as Group Exhibit C, at pp. 67-71.

65. Instead of ceasing collections, however, Defendant Arrow then sold/transferred the account to Defendant LVNV. Defendant LVNV then had another collection agency send Ms. Davis a collection letter, dated November 21, 2011, which demanded payment of the GE Money Bank debt. A copy of this collection letter is attached as Group Exhibit D, at p. 16.

66. Accordingly, on December 22, 2011, Ms. Davis' LASPD attorney had to send Defendant LVNV a letter, again directing it to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Group Exhibit E,

at pp. 38-40.

## COUNT I
### Violation Of § 1692c(c) Of The FDCPA --
### Failure To Cease Communications And Cease Collections

67.    Plaintiffs adopt and reallege ¶¶ 1-66.

68.    Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay. See, 15 U.S.C. § 1692c(c).

69.    Here, the letters from Plaintiffs' agent/attorney, LASPD, told Defendants to cease communications and cease collections. By continuing to communicate regarding these debts and demanding payment, Defendants violated § 1692c(c) of the FDCPA.

70.    Defendants' violations of § 1692c(c) of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## COUNT II
### Violation Of § 1692c(a)(2) Of The FDCPA --
### Communicating With A Consumer Represented By Counsel

71.    Plaintiffs adopt and reallege ¶¶ 1-66.

72.    Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address. See, 15 U.S.C. § 1692c(a)(2).

73.    Defendants knew, or readily could have known, that Plaintiffs were represented by counsel in connection with their debts because their attorneys at LASPD

had informed Defendants, in writing, that Plaintiffs were represented by counsel, and had directed a cessation of communications with Plaintiffs. By directly sending collection letters to Plaintiffs, despite being advised that they were represented by counsel, Defendants violated § 1692c(a)(2) of the FDCPA.

74. Defendants' violations of § 1692c(a)(2) of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## COUNT III
## Violation Of § 1692f Of The FDCPA --
## Unfair Or Unconscionable Collection Actions

75. Plaintiffs adopt and reallege ¶¶ 1-66.

76. Section 1692f of the FDCPA prohibits a debt collector from using any unfair or unconscionable means to collect or attempt to collect a debt. Defendant Arrow, by selling accounts in which there was a cease collections demand, and Defendant LVNV, by either not finding out if there was a cease collections on Plaintiffs' accounts or ignoring the fact that there was a cease collections on Plaintiffs' accounts, used unfair or unconscionable actions, in violation of § 1692f of the FDCPA.

77. Defendants' violations of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

Plaintiffs, Michelle Tarpley, Stella Schaeffer, Deborah Saravello, Denise Elliott, Rosina Turmel, Rachanee Lee, Elias Rivera, Lillian Buti, Lynn Cahill, Sharda White, Vickie Shoffler, Frederick Pope and Yulanda Davis, pray that this Court:

1.  Find that Defendants' debt collection actions violated the FDCPA;

2.  Enter judgment in favor of all Plaintiffs, and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

3.  Grant such further relief as deemed just.

## JURY DEMAND

All Plaintiffs demand trial by jury.

> Michelle Tarpley, Stella Schaeffer, Deborah Saravello, Denise Elliott, Rosina Turmel, Rachanee Lee, Elias Rivera, Lillian Buti, Lynn Cahill, Sharda White, Vickie Shoffler, Frederick Pope, and Yulanda Davis,
>
> By: /s/ David J. Philipps_____
> One of Plaintiffs' Attorneys

Dated: November 2, 2012

David J. Philipps     (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angiekrobertson@aol.com

20